1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9

10  VIRGINIA BURDETTE, et al.,                    CASE NO. C11-0980RSM

11                        Plaintiffs,             ORDER ON PLAINTIFFS' RULE 56
                                                  MOTIONS FOR PARTIAL
12          v.                                    SUMMARY JUDGMENT

13  STEADFAST COMMONS II, LLC, et al.,

14                        Defendants.

15                            **I. INTRODUCTION**

16          This matter comes before the Court pursuant to Plaintiffs' Fed. R. Civ. P. 56 motion for

17  partial summary judgment on the issues of liability (Dkt. # 146) and causation and injuries (Dkt.

18  # 152).  For the reasons set forth below, Plaintiffs' motions are DENIED.

19                            **II. BACKGROUND**

20          On the morning of April 19, 2008, Lorilei Specht (formerly Lorilei Wehl) walked across

21  a snow-covered parking lot and entered the Everett Mall ("Mall") employee entrance.  Upon

22  entering, Mrs. Specht walked on three carpeted floor mats, which were adjacently placed by the

23  door.  When she stepped off the mats and onto the tiled hallway, she slipped and fell on the floor.

24

1      At the time, Shelly Spelger was in charge of the Mall's housekeeping services, including

2   the employee entrance and hallway.[1]  Dkt. # 159 ¶ 6.  Between 8:20 a.m. and 8:30 a.m., Ms.

3   Spelger testifies to cleaning the employee entrance area where she vacuumed the floor mats,

4   removed wet substances off the floor, and confirmed that a wet floor sign was near the door.

5   Dkt. # 159 ¶ 9.  Inspections of the area continued in 20 to 30 minute rotations thereafter.  Dkt. #

6   159 ¶ 11.   Around 8:30 a.m., Deborah Crompton entered the Mall employee entrance and

7   observed "footprints and standing water" on the floor continuing down the hallway, with only

8   one mat by the entrance, and no warning signs out.  Dkt. # 150 ¶¶ 3-7.  Afterwards, Mrs. Specht

9   entered sometime between 8:30 a.m. and 9:00 a.m.  Dkt. # 149 ¶ 4.  She did not see a wet floor

10  sign and did not look for water down the hallway.  Dkt. # 149 ¶¶ 7-9.  Mrs. Specht then stomped

11  her boots on the carpet, stepped off onto the tiled floor and fell backwards, allegedly impacting

12  her buttocks, hips, shoulders and head from the fall.  Dkt. # 148, Ex. 4, p. 165-66.

13      Antonio Tararan and Richard Hancock were patrolling Mall security at the time and

14  attended to Mrs. Specht after the fall.  According to the incident report, Mr. Tararan observed

15  "some residual water on the ground" and that "no wet floor sign was posted at the time of the

16  incident."  Dkt. # 148, Ex. 1, p. 4.  Mr. Hancock observed that the wet floor sign was out but it

17  "was not entirely visible when walking through the door."  Dkt. # 148, Ex. 1, p. 7.  The security

18  guards helped Mrs. Specht up and walked her to her employer's store.  Dkt. #148, Ex. 1, p. 4, 7.

19

20  _____

21      [1] Ms. Spelger was employed by Service Management Systems, Inc., ("SMS") which
    provided the Mall's janitorial services at the time of the incident.  Dkt. # 159 ¶ 2.  SMS had a
22  vendor services agreement with Steadfast Commercial Management Company, Inc., ("SCMC") a
    company that was providing property management services to the Mall.  Dkt. # 44 ¶ 10; Dkt. #
23  52 ¶ 3.  Steadfast Everett Mall, LLC owned the Mall at the time of the incident.  Dkt. # 53 ¶ 5.
    SMS, SCMC, Steadfast Everett Mall, LLC and Steadfast Commons II, LLC (collectively,
24  "Defendants") are the named defendants in this action.

ORDER ON PLAINTIFFS' RULE 56 MOTIONS FOR PARTIAL SUMMARY JUDGMENT - 2

1   An aid car arrived shortly after and advised Mrs. Specht to see a doctor.  Dkt. # 148, Ex. 1, p. 4.

2   She later went to the emergency room to receive treatment.

3          Mrs. Specht, joined by her husband and Virginia Burdette, in her capacity as bankruptcy

4   trustee, (collectively "Plaintiffs") filed an amended complaint seeking damages for negligence

5   and loss of consortium.  Dkt. # 39 ¶¶ 33-41.  In the instant action, Plaintiffs filed two separate

6   motions for partial summary judgment on the issues of liability (Dkt. # 146) and causation and

7   injuries (Dkt. # 152) on the negligence claim.  Thus, only these issues are discussed below.

## III. DISCUSSION

### A. Legal Standard

10          Summary judgment is proper if the moving party establishes that there are no genuine

11  issues of material fact and it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);

12  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).   In ruling on summary judgment, a

13  court does not weigh evidence to determine the truth of the matter, but "only determine[s]

14  whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir.

15  1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir.

16  1992)).  Material facts are those which might affect the outcome of the suit under governing law.

17  *Anderson,* 477 U.S. at 248.

18          The moving party initially bears the burden of proving the absence of a genuine issue of

19  material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Where the moving party

20  meets that burden, the burden then shifts to the non-moving party to designate specific facts

21  demonstrating the existence of genuine issues for trial.  *Id.* at 324.  The non-moving party must

22  show more than the mere existence of a scintilla of evidence.  *Anderson*, 477 U.S. at 252.  In

23  other words, it "must do more than show there is some metaphysical doubt as to the material

24  facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  As such,

1  there must be evidence on which the jury could reasonably render a verdict in the non-moving

2  party's favor.  *Anderson*, 477 U.S. at 252.  In determining this, the Court must draw all

3  reasonable inferences in favor of the non-moving party.  *Id.* at 255.

4  **B.  Liability**

5        In Washington, there are three requirements to establish premises liability in cases

6  involving a plaintiff's slip and fall from water on the ground.  The plaintiff must prove that: (1)

7  the water on the floor was dangerously slippery, (2) the owner knew or should have known both

8  that water would make the floor slippery, and (3) there was water on the floor at the time

9  plaintiff slipped.  *Kangley v. United States*, 788 F.2d 533, 534 (9th Cir. 1986).  A wet floor itself

10  does not establish the existence of a dangerous condition.  *Id.* at 535; *see Brant v. Market Basket*

11  *Stores*, 72 Wash.2d 446, 451-52 (1967).  And a dangerous condition cannot be inferred from the

12  fact that the plaintiff fell.  *Knopp v. Kemp & Herbert*, 193 Wash. 160, 164-65 (1938).  As such,

13  the existence of a rug inside a door alone is not enough to establish that an owner or occupier

14  knows the floor might be dangerous, as the same is true if it is wet outside.  *Charlton v. Toys R*

15  *Us—Delaware, Inc.*, 158 Wash.App. 906, 915 (2010) (citations omitted).

16        Plaintiffs argue that Mrs. Specht slipped on an "unsafe accumulation of water" based on

17  Ms. Crompton's observation that only one mat was at the entrance and puddled footprints visibly

18  ran down the hallway.  Dkt. # 146, p. 19.  As Mrs. Specht observed three mats when she entered,

19  Plaintiffs conclude that a Mall employee was present between the time the women arrived,

20  evidencing Defendants' knowledge and anticipation of harm from the water on the ground.  *Id.*

21  Defendants do not dispute whether the accumulation of water was indeed "dangerously slippery"

22  or that there was water on the floor when Mrs. Specht fell.  However, Defendants argue that the

23  evidence is inconsistent with Ms. Spelger's testimony of three mats and no puddles shortly

24  before Ms. Crompton's arrival.  Dkt. # 157, p. 20.  They argue that Ms. Spelger and Ms.

1  Crompton's competing testimony raises a material issue on timing and whether Defendants

2  should have known that water was on the ground and that it would make the floor slippery.

3      Further, "the general rule governing liability for failure to maintain business premises in

4  a reasonably safe condition requires that the plaintiff prove (1) the unsafe condition was caused

5  by the proprietor or its employees, or (2) the proprietor had actual or constructive knowledge of

6  the dangerous condition." *Coleman v. Ernst Home Ctr., Inc.*, 70 Wash.App. 213, 217 (1993); *see*

7  *also Schmidt v. Coogan*, 162 Wash.2d 488, 492 (2007) ("In a premises liability claim, the

8  plaintiff must establish that the defendant either caused the dangerous condition or knew or

9  should have known of its existence in time to remedy the situation."). "The plaintiff has the

10 burden of proving that the defendant had actual or constructive knowledge of the unsafe

11 condition." *Kangley*, 788 F.2d at 534.

12      Constructive knowledge exists if the unsafe condition has been present long enough that

13 a person exercising ordinary care would have discovered it. *Pimentel v. Roundup Co.*, 100

14 Wash.2d 39, 44 (1983).  The plaintiff must establish that the defendant had, or should have had,

15 knowledge of the dangerous condition in time to remedy the situation before the injury or to

16 warn the plaintiff of the danger. *Ingersoll v. DeBartolo, Inc.*, 123 Wash.2d 649, 652 (1994)

17 (internal quotation omitted).  Thus, the decisive issues are the length of time the condition is

18 present and the opportunity for discovery under the circumstances proved. *Coleman*, 70

19 Wash.App. at 220 (citing *Morton v. Lee*, 75 Wash.2d 393, 397 (1969)).

20      The permissible period of time for the discovery and removal or warning of the

21 dangerous condition is measured by the varying circumstances of each case, such as the number

22 of employees, their physical proximity to the hazard, and the general likelihood they would

23 become aware of the condition in the normal course of duties. *Id.*  The plaintiff may prove

24

liability by direct and/or circumstantial evidence.  However, if circumstantial evidence leads only to speculation, a verdict cannot be based on the inferences.  *Helman v. Sacred Heart Hosp.*, 62 Wash.2d 136, 148 (1963); *Falconer v. Safeway Stores, Inc.*, 49 Wash.2d 478, 479 (1956).  As such, whether a defective condition existed long enough so that it should have reasonably been discovered is ordinarily a question of fact for the jury.  *Presnell v. Safeway Stores, Inc.*, 60 Wash.2d 671, 675 (1962).

As discussed above, Plaintiffs conclude by circumstantial witness testimony that Defendants had actual or constructive knowledge of the wet floor between the time Ms. Crompton and Mrs. Specht walked through the entrance.  Dkt. # 146, p. 16-17.  Defendants argue there was no actual knowledge because no Mall employee was present in the hallway when Mrs. Specht fell.  Dkt. # 157, p. 19.  Further, the conflicting witness statements regarding the time, amount of water in the hallway, and presence of signage, all present material issues on whether Defendants had constructive knowledge of the wet floor.  Dkt. # 157, p. 20.  The Court agrees.  Plaintiffs fail to establish that Defendants had sufficient opportunity to discover and remedy the situation within these facts.  The window for discovery was 30 minutes at most considering the estimated times Ms. Spelger, Ms. Crompton and Mrs. Specht were at the Mall employee entrance.  The length of time the alleged puddles of water stayed on the ground is also speculative.  *Compare Wall v. Wal-Mart Associates, Inc.*, No. 070363, 2008 WL 1746044 at *4 (W.D. Wash. Apr. 14, 2008) (finding that circumstantial evidence supporting plaintiff's argument that a substance was on the ground for over two hours was insufficient to defeat defendant's showing of insufficient constructive notice because the witness testimonies, though based on actual observations, had gaps that led to speculation of how long the substance was on the floor), *and Coogan*, 162 Wash.2d at 492 (finding summary judgment was appropriate where

1  plaintiff offered evidence that a shampoo spill on which she slipped was visible to employees

2  from the cash registers, and that during the time she was at the checkout stand none of the

3  employees made any effort to clean it up).  Therefore, Plaintiffs' motion for partial summary

4  judgment as to the issue of liability is DENIED.

5  **C.  Causation and Injuries**

6       A cause of action for negligence requires the plaintiff to establish (1) the existence of a

7  duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the

8  breach and the injury.  *Tincani v. Inland Empire Zoological Soc'y*, 124 Wash.2d 121, 126-28

9  (1994); *see also Pedroza v. Bryant*, 101 Wash.2d 226, 228 (1984).  The term "proximate cause"

10 means a cause which in direct sequence, unbroken by any new independent cause, produces the

11 injury complained of and without which the injury would not have happened."  *Bernethy v. Walt*

12 *Failor's Inc.*, 97 Wash.2d 929, 935 (1982).  A finding of proximate caused is premised upon

13 proof of cause in fact as well as a legal determination that liability should exist.  *Id.*  "[T]he

14 question of proximate cause is for the jury, and it is only when the facts are undisputed and the

15 inferences therefrom are plain and incapable of reasonable doubt or difference of opinion that it

16 may be a question of law for the court."  *Petersen v. State*, 100 Wash.2d 421, 436 (1983) (citing

17 *Mathers v. Stephens*, 22 Wash.2d 364, 370 (1945)).  A plaintiff must present medical testimony

18 to establish the causal link between the injury and the incident.  *Riggins v. Bechtel Power Corp.*,

19 44 Wash.App. 244, 254 (1986).

20      Plaintiffs seek summary judgment to the extent that Mrs. Specht's injuries, including a

21 concussion and "pain" in the head, shoulders, lower back, left knee and left wrist leading to

22 surgery, were caused in fact by the fall.  Dkt. # 152, p. 1-2.  They argue judgment is appropriate

23 because Defendants have conceded to these injuries.  Dkt. # 152, p. 8.  In effect, they only seek a

24 determination on the *cause in fact* of the injuries, and not to the proximate cause, which would

1  require a finding of liability.  Defendants argue that this motion is procedurally improper and

2  cannot be granted because conflicting evidence exists.  Dkt. # 154, p. 10.  The Court agrees.

3  　　　　When Plaintiffs filed this motion in succession with the liability issue, the local court

4  rules provided that "filing of multiple dispositive motions . . . is strongly discouraged and

5  successive motions may be stricken."  CR 7(e)(3).  At present, "[a]bsent leave of the court,

6  parties must not file contemporaneous dispositive motions, each one directed toward a discrete

7  issue or claim."[2]  LCR 7(e)(3).  According to the new rules, this action would be dismissed as

8  procedurally improper.  While the new rules are not applied here, the Court may nonetheless

9  exercise its authority to strike this successive motion in accordance with the former rules.

10 　　　　Additionally, Defendants establish that there are genuine issues as to whether the fall

11 caused the range of injuries claimed.  Defendants' medical experts agreed that certain injuries

12 such as the concussion and "strains" to lower back, left wrist and left knee were caused by the

13 fall.  Dkt. # 156, Ex. B, p. 29-30.  However, they dispute the objectivity of Mrs. Specht's doctors

14 in diagnosing the injuries and whether the extent of the injuries or the injuries themselves could

15 be separated from the effect of pre-existing injuries before the fall and how Mrs. Specht's

16 psychological state affected her level of "pain" at the time.  Dkt. # 156, Ex. B, p. 29-32; Dkt. #

17 154, p. 6-7.  Even though Defendants conceded in part that these injuries were caused by the fall,

18 a judgment to causation here cannot be made without a determination on the nature and extent of

19 such injuries.  Attempting to separate the cause and extent of injuries only complicates the issue

20 at hand and a judgment is inapposite if liability is ultimately not found.  Plaintiffs' motion for

21 partial summary judgment on the issue of causation and injuries is DENIED.

22 ――――――――――――――――

23 　　　[2] The new Local Civil Rules of practice before the U.S. District Court for the Western
   District of Washington went into effect on Dec. 1, 2012, promulgated under 28 U.S.C. § 2071

24 and Fed. R. Civ. P. 83.

## IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Plaintiffs' Fed. R. Civ. P. 56 motion for partial summary judgment on the issue of liability (Dkt. # 146) is DENIED.

(2) Plaintiffs' Fed. R. Civ. P. 56 motion for partial summary judgment on the issue of causation and injuries (Dkt. # 152) is DENIED.

(3) The Clerk is directed to forward a copy of this Order to plaintiffs and to all counsel of record.

Dated this 9th day of January 2013.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE